UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **BRENT JAMES LANDRY** | **02-11608** |
| DEBTOR | CHAPTER 7 |
| | |
| **SORIS FINANCIAL** | ADV. NO. |
| PLAINTIFF | **02-1115** |
| V. | |
| **BRENT JAMES LANDRY** | |
| DEFENDANT | |

## MEMORANDUM OPINION

Soris Financial, a division of Case Credit Corporation ("Soris") sued debtor Brent Landry ("Landry") for losses resulting from the disappearance of its collateral, several truck tractors. Soris sued to have Landry's obligations to it declared non-dischargeable under 11 U.S.C. §523(a)(6). Soris's complaint alleges that Landry willfully and maliciously failed to disclose the location of the collateral and also failed to turn over the collateral. In the alternative, Soris urges the Court to deny Landry's discharge under Bankruptcy Code sections 727(a)(2)(A) and (a)(4)(A). It alleges that the debtor concealed his property or property of the estate with the intent to hinder, delay or defraud Soris, and falsely stated in his schedules that Soris had taken possession of its collateral.

**Facts**

In March and June 1999, Landry signed two financed lease agreements ("Agreements") covering a total of seven truck tractors.[1] The leases were assigned to Soris, which financed the transactions. The leases provided that, upon the termination of the agreements, Landry would lose all rights to keep the trucks.[2] Landry also agreed that he would keep the idle equipment in Belle Rose, Louisiana, and upon request would advise the lessor (now its assignee, Soris) of the "exact location of the Equipment."[3]

Soris cancelled the leases after Landry defaulted on them,[4] and in October 2000 referred the account to its counsel to recover the vehicles. It eventually succeeded in recovering only one of the seven trucks, a 1992 Kenworth, despite using private firms to attempt to locate them and obtaining an order in December 2001 from the Twenty-third Judicial District Court in Assumption Parish directing Landry to surrender the trucks. As of April 1, 2003, Landry owed a combined total of $166,932 on the two leases.[5] Ricky Hebert of Bayou Appraisal Service testified that the missing trucks probably were worth $71,000 at the date of trial. The debtor offered no evidence to contradict the values Hebert assigned to the vehicles.

---

[1] Landry testified that in his trucking business he at one time owned a total of 25 trucks.

[2] Agreement, p. 3, "Additional Provisions," para. 2.

[3] Agreement, p. 2, "Location." The exact language of the agreement is "[t]he Equipment will be operated out of and, when not in use, will be kept only at the location specified on page 1. I will, when requested, advise you of the exact location of the Equipment."

[4] Landry stopped paying on one lease in June 2000. He continued to make payments on the second until October 2000.

[5] Soris netted $4,600 from the liquidation of the only truck it recovered.

Although Brent Landry does not dispute Soris's proofs of claim, he does dispute his liability for the missing trucks. Landry testified that he had the trucks parked at three different locations in Louisiana and Texas at the request of a Soris representative whose name he could not recall.[6] However, Landry offered no evidence to confirm the date or dates on which the trucks allegedly were left at the various locations.

The debtor's testimony concerning the information he imparted to Soris about the trucks was inconsistent. His varying accounts cause the Court to give no credence to his testimony. Landry initially insisted at trial that he had a telephone conversation with a Soris representative in which he told the representative where the trucks had been left. Later in his testimony, Landry admitted that in fact Blake Lantia, to whom Landry claims to have granted a power of attorney to deal with the trucks, informed Soris of the vehicles' locations. Landry did not call Lantia to testify at trial, nor did he offer the power of attorney into evidence. In any case, Landry never actually offered any corroboration of his claim that Soris had been notified about the two trucks and that they had recovered them.[7]

The evidence revealed that though Landry was notified in late 2001 that two of the trucks were in storage at a wrecker service company,[8] he failed to relay this information to Soris.[9] Indeed, Landry conceded at trial that when he signed his

---

[6] After Landry looked at Soris's Exhibit 9, its loan collectors' notes, he remembered talking to "Melissa" and thought he told her where the trucks were, even though he maintained that a male employee told him to park the trucks. The collectors' notes do not reflect any conversations about parking the trucks.

[7] At his deposition given in this case, Landry stated that he never told Soris where the trucks were.

[8] At the time, Landry no longer resided at the address to which the notices were sent. He testified that his sister delivered the notices to him within a few weeks after the date on the notices.

[9] Buddy Couch, credit manager for Soris, testified that Case/Soris only received written notice that one of the vehicles leased to Landry had been towed or stored. Couch claimed to have faxed a request to Landry's

3

schedules,[10] he did not know where the trucks were, and specifically did not know whether Soris had recovered them. Nevertheless, Landry's schedule F stated that Soris had picked up the trucks and had possession of them on or before the petition date, and asserted that the debt to Soris is subject to setoff. As of the trial date, Soris had not determined the location and disposition of the trucks.

## Discussion

### I. 11 U.S.C. §727(a)(2)(A)

Under section 727(a)(2)(A), Soris must prove that Landry "with intent to hinder, delay or defraud a creditor or an officer of the estate . . . transferred, removed, destroyed, mutilated or concealed or [ ] permitted to be transferred, removed, destroyed, mutilated or concealed -- (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition." Concealment under this section is not limited to physical concealment. It also comprises such conduct as placing assets beyond a creditor's reach, or failing to divulge information owed to a creditor. 6 *Collier on Bankruptcy* §727.06[b] (15th Ed. 2003). Removal includes an actual physical change in the location or position of the debtor's property resulting in the depletion of the estate. *Id*. at §727.06[a].

An objector under §727(a)(2)(A) need only show that the debtor acted "with one of three states of mind – a showing of intent to *defraud* is not necessary." *In re Towe*, 147 B.R. 545, 548 (Bankr. D. Mont. 1992), citing *In re Elholm*, 80 B.R. 964 (D. Minn.

---

lawyer asking for the location of the equipment on March 1, 2001, but did not recall whether he followed up on the request. There is no evidence that Landry or his attorney responded to any fax.

[10] Landry filed his chapter 7 case on June 11, 2002.

4

1987) (emphasis added).  The requisite intent most often is proven by circumstantial evidence and inferences drawn from the actions and conduct of the debtor.  *In re Dennis*, 330 F.3d 696, 701-2 (5th Cir. 2003);  Matter *of Hughes*, 184 B.R. 902, 908 (Bankr. E.D. La. 1995).  Soris has carried its burden of proof under §727(a)(2)(A).

Landry does not dispute his obligations under the Agreements to keep the trucks in a specific place -- Belle Rose -- when they were not in use; to inform Soris of the exact location of the trucks; and to return the trucks to Soris when the leases terminated. However, the debtor's attempts to explain his failure to meet his obligations under the leases are not persuasive.  Landry could not recall the name of the Soris employee who allegedly told him to park the trucks, or the name of any Soris employees with whom he talked, until he was shown a Soris exhibit.  He gave contradictory testimony about whether he told Soris of the trucks' locations.  Perhaps most importantly, Landry did not offer the testimony of Blake Lantia, to whom he claimed to have delegated the authority to operate the trucks and who supposedly told Soris where the vehicles were, to corroborate the debtor's version of the key facts.  Nor did Landry offer into evidence the power of attorney.  On the whole, the evidence reveals that Landry really was not concerned with the disposition of the trucks, preferring to leave the matter to Lantia's discretion.

Moreover, Landry admitted he was notified in October 2001 of the continued storage location of two of the trucks, but did not relay this information to Soris, *assuming* that Soris also had received notice concerning their storage.  Soris's November 2001 state court lawsuit to recover the trucks and the subsequent state court judgment ordering Landry to surrender the vehicles did not spur Landry to action either.  The Court

5

concludes from Landry's testimony and other evidence that Landry permitted Lantia or someone else to conceal or remove the trucks, and that Landry took no steps to learn their whereabouts.

Landry admitted that he knew of his obligations concerning the trucks. Despite this, he took no action to learn their location. The debtor's admissions and the other evidence prove that Landry intended at least to hinder and delay Soris's recovery of the vehicles, and so bring Soris's claims within the reach of §727(a)(2)(A). *See In re Rowe*, 145 B.R. 556, 559-60 (Bankr. N.D. Ohio 1992) (debtor's reckless indifference to his contractual obligation to return trucks securing loan precluded his discharge under §727(a)(2)(A), when debtor knew that removal or hiding of the trucks violated the terms of the security agreement and permitted his employees to remove or destroy the trucks and truck parts).

## II. 11 U.S.C. §727(a)(4)

Soris also seeks to deny Landry's discharge on the basis of his false oaths. Bankruptcy Code section 727(a)(4) allows the court to deny a debtor's discharge if "the debtor knowingly and fraudulently, in or in connection with the case – (A) made a false oath or account." Under this section, the objector must prove that: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Matter of Beauboeuf*, 966 F.2d 174, 178 (5th Cir. 1992). False statements in or omissions from the petition or schedules, or false

statements given by the debtor at an examination during the case, are sufficient to justify denial of discharge under §727(a)(4). *Hughes*, 184 B.R. at 909.

The evidence demonstrates that Landry knowingly made false oaths on his schedules and in examinations. Landry stated at trial that he did not know where the trucks were or whether Soris had recovered them. Despite this, Landry still signed schedule F declaring that Soris had possession of the trucks. The debtor admitted that statements he made on his schedules were false, and that he knew this at the time he signed the schedules. The Court has already pointed out Landry's inconsistent statements concerning the location of the trucks.

A material false oath "concerns the discovery of assets . . . or the existence and disposition of [the debtor's] property." *Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir. 1992) (citation omitted). The debtor's false and inconsistent statements are material because they concern the location and disposition of the trucks -- valuable property of the debtor and, thus, the estate. Reckless indifference to the truth is sufficient to establish the fraudulent intent required to deny discharge under 11 U.S.C. §727(a)(4). *In re Murray*, 249 B.R. 223, 228 (E.D.N.Y. 2000) (citation omitted). Landry's disregard for the truth in his disclosures about the vehicles in his schedules and other statements evidences the debtor's fraudulent intent, and is sufficient to bar his discharge under section 727(a)(4).[11]

---

[11] The evidence also supports denying the debtor's discharge under 11 U.S.C. §727(a)(5) for failure of the debtor to satisfactorily explain a loss of assets. However, Soris's complaint does not make a claim under §727(a)(5).

**Conclusion**

The Court will deny the debtor's discharge under 11 U.S.C. §§727(a)(2)(A) and (a)(4) and will dismiss the claim of the complaint brought under 11 U.S.C. §523(a)(6) as moot.

Baton Rouge, Louisiana, August 21, 2003.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE